03-CV-01328-CMP

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUN 2 0 2003   KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FERNANDO MORENO,

        Plaintiff,

vs.

PAUL SUGURO, a Seattle Police Officer, and the marital community of PAUL and JANE DOE SUGURO; RUSSELL WEKLYCH, a Seattle Police Officer, and the marital community of RUSSELL and JANE DOE WEKLYCH; DAVID RITTER, a Seattle Police Officer, and the marital community of DAVID and JANE DOE RITTER; CITY OF SEATTLE; SHANE WATKINS, a King County Sheriff's Deputy, and the marital community of SHANE and JANE DOE WATKINS; JAMES A. KING, a King County Sheriff's Deputy, and the marital community of JAMES A. and JANE DOE KING; TRAVIS DEFRIES, a King County Sheriff's Deputy, and the marital community of TRAVIS DEFRIES and JANE DOE DEFRIES; and KING COUNTY, WASHINGTON,

        Defendants.

No. C03-1328

COMPLAINT FOR DAMAGES

(Jury Trial Demanded)

COMPLAINT FOR DAMAGES -- 1

ORIGINAL

LAW OFFICES OF MICHAEL G. BRANNAN
2033 SIXTH AVENUE, SUITE 800
SEATTLE, WASHINGTON 98121
206-448-2065

COMES NOW the plaintiff, Fernando Moreno, and alleges as follows:

## I. PARTIES

1. Fernando Moreno is a resident of Mesa, Arizona.

2. The City of Seattle is a municipal corporation and a political subdivision of the State of Washington.

3. Paul Suguro is, and was, at all times pertinent to this suit, a Seattle Police Officer.

4. Jane Doe Suguro is the spouse, if any, of Paul Suguro.

5. If Paul Suguro was married at the time of the incident, all acts of Paul Suguro alleged herein were for and on behalf of the marital community of Paul Suguro and his spouse, Jane Doe Suguro.

6. Russell Weklych is, and was, at all times pertinent to this suit, a Seattle Police Officer.

7. Jane Doe Weklych is the spouse, if any, of Russell Weklych.

8. If Russell Weklych was married at the time of the incident, all acts of Russell Weklych alleged herein were for and on behalf of the marital community of Russell Weklych and his spouse, Jane Doe Weklych.

9. David Ritter is, and was, at all times pertinent to this suit, a Seattle Police Officer.

10. Jane Doe Ritter is the spouse, if any, of David Ritter.

11. If David Ritter was married at the time of the incident, all acts of David Ritter alleged herein were for and on behalf of the marital community of David Ritter and his

COMPLAINT FOR DAMAGES -- 2

spouse, Jane Doe Ritter.

12. Shane Watkins is, and was, at all times pertinent to this suit, a King County Sheriff's Deputy.

13. Jane Doe Watkins is the spouse, if any, of Shane Watkins.

14. If Shane Watkins was married at the time of the incident, all acts of Shane Watkins alleged herein were for and on behalf of the marital community of Shane Watkins and his spouse, Jane Doe Watkins.

15. James A. King is, and was, at all times pertinent to this suit, a King County Sheriff's Deputy.

16. Jane Doe King is the spouse, if any, of James A. King.

17. If James A. King was married at the time of the incident, all acts of James A. King alleged herein were for and on behalf of the marital community of James A. King and his spouse, Jane Doe King.

18. Travis Defries is, and was, at all times pertinent to this suit, a King County Sheriff's Deputy.

19. Jane Doe Defries is the spouse, if any, of Travis Defries.

20. If Travis Defries was married at the time of the incident, all acts of Travis Defries alleged herein were for and on behalf of the marital community of Travis Defries and his spouse, Jane Doe Defries.

21. King County is a political subdivision of the State of Washington.

## II. JURISDICTION AND VENUE

22. This Court has jurisdiction over the subject matter of this suit pursuant to 28

COMPLAINT FOR DAMAGES -- 3

U.S.C. § 1343(3) and 42 U.S.C. § 1983. This Court has pendent jurisdiction over the state law claims.

23. All claims arose in the Western District of Washington. On information and belief, all parties except plaintiff Fernando Moreno reside in the Western District of Washington. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### III. OPERATIVE FACTS

24. On June 22, 2000, at approximately 11:00 a.m., two men held up the Wells Fargo Bank, located at 13273 Aurora Avenue N. in the City of Seattle.

25. Members of the Seattle Police Department responded to the scene of the robbery, and a gun battle ensued between the suspects and the police. In the course of that gun battle, a Seattle Police Officer was wounded, and one of the suspects was killed.

26. The other suspect fled the scene, and remained at large until February 7, 2001, at which time he turned himself in to the King County Jail. That suspect's name was Aristotle Marr.

27. Within hours of the bank robbery on June 22, 2000, Seattle Police Homicide and Robbery detectives developed information about the identity of the surviving robbery suspect. Seattle Police Detectives began the process of locating and attempting to interview persons who might have information about "Ari" Marr.

28. In the course of that investigation, Seattle Police Detectives determined that a young man named Troy, who later turned out to be an individual named Troy Lisk, was an acquaintance of Mr. Marr and might have information that could help locate Mr. Marr.

29. Having determined that Troy Lisk lived at 17 – 211th Place N.E. in the City of

1  Sammamish, King County, Washington, a detail of Seattle Police Detectives - defendant
2  DAVID RITTER, defendant PAUL SUGURO, and defendant RUSSELL WEKLYCH - went
3  to that address, along with a backup detail of King County Sheriff's Deputies - defendant
4  JAMES A. KING, defendant SHANE WATKINS, and defendant TRAVIS DEFRIES – to
5  locate and question Troy Lisk.

      30.    At approximately 3:00 a.m. on the morning of June 23, 2000 (i.e., approximately 16 hours after the bank robbery), the group of defendant police officers referred to in paragraph 29 above proceeded to the home of Troy Lisk at 17 – 211th Place N.E. in the City of Sammamish.

      31.    The home in question, located at 17 – 211th Place N.E. in the City of Sammamish, is owned by Thomas Lisk and Cheryl Lisk, both of whom resided in the house and both of whom were asleep at the start of this incident. At the time of this incident, their two adult children, Troy Lisk and Tamara Lisk, also lived in the home, and were also asleep at the start of this incident. Their other adult son, Chad Lisk, had arrived at the home approximately 15 or 20 minutes before the start of this incident with his friend, Plaintiff FERNANDO MORENO, whom he had just picked up from the Seattle-Tacoma International Airport.

      32.    The owner of the house, Thomas Lisk, at the time of this incident was employed as a police officer for the City of Bellevue Police Department. At the time of this incident, he had been employed as a Bellevue Police Officer for 18 years, and had served as a police officer for a total of 22 years.

      33.    FERNANDO MORENO's friend, Chad Lisk, at the time of the incident, was

1 employed as a police officer by the Maricopa County (Phoenix), Arizona Sheriff's Office.

34. When Chad Lisk and Plaintiff FERNANDO MORENO arrived at the Lisk home, FERNANDO took his suitcase into the house and left it in a front bedroom. Chad then gave him a tour of the house, showing him the ground level first, and then the basement. When they came up from the basement, they passed by the front door of the house on their way up the stairs to the second floor.

35. As they passed the front door, FERNANDO MORENO saw that it was shut. He was halfway up the stairs when his attention was drawn to the front door, so he turned and saw a man standing at the front door with his gun drawn. The man was wearing a dark jacket with nothing on it to identify him as a police officer. The front door was now open. The man was crouched down holding a gun in his two hands in the "low ready" position. The gun was pointed towards Chad.

36. The man with the gun told Plaintiff FERNANDO MORENO and Chad Lisk to put their hands up and to come downstairs. FERNANDO was scared and had no idea who the man with the gun might be, or what he wanted of them. Chad told the man he (Chad) was a police officer but the man kept yelling at Plaintiff FERNANDO MORENO and Chad to put their hands up.

37. Because his father, Tom Lisk, is a veteran Bellevue police officer, Chad thought the man might be someone his father had arrested who had come back for retaliation. Chad yelled out to wake his father: "Dad, there's a guy at the door with a gun." Chad started slowly backing up the stairs, away from the guy with the gun. Chad wanted "to get [his] gun to shoot him or at least challenge him. To protect my family and to protect my family's house."

COMPLAINT FOR DAMAGES -- 6

38.     The man with the gun commanded Chad Lisk to come down the steps. Chad Lisk continued to walk backwards up the steps to retrieve his weapon and said, while is hands were in the air, "Who are you?" to the men in his home. The man with the gun answered, "Police. Keep your hands out of your pockets and come down here." Chad Lisk replied that he was a police officer, and was going to get his badge.

39.     Chad Lisk was able to retrieve his badge from his pocket. The badge was a six-point star, about three inches from point to point, and was gold in color. Prominently displayed on the face were the words, "Deputy Sheriff" and "Maricopa County, Arizona." He held the badge put in front of him while keeping his other hand in the air.

40.     The man with the gun said, "I don't care who you are. Get down here."

41.     At about this time several police rushed in and grabbed both Plaintiff FERNANDO MORENO and Chad Lisk, throwing them up against a wall. No one ever knocked on the door, and no one ever asked for permission to enter the house. When the defendants referred to in paragraph 29 above arrived at the home, some or all of them entered the front door without being admitted. Other than saying the word "Police" the one time referred to in paragraph 38 above, the men had neither said, done, nor shown anything in any way that demonstrated to Chad Lisk or FERNANDO MORENO that they were police officers. They had not shown a badge or other identification, nor did their clothing bear any insignia or markings to show they were affiliated with any police agency. Plaintiff FERNANDO MORENO heard Chad tell them that he was a police officer and he heard one man reply that he didn't care if he was.

42.     Two officers then dragged Plaintiff FERNANDO MORENO outside the house

COMPLAINT FOR DAMAGES -- 7

LAW OFFICES OF MICHAEL G. BRANNAN
2033 SIXTH AVENUE, SUITE 800
SEATTLE, WASHINGTON 98121
206-448-2065

onto the porch and started searching through his suitcase. They did not ask for permission to look inside his suitcase, they simply opened it and dug in. Although Plaintiff FERNANDO MORENO insisted he was from Arizona, the officers did not believe him. Without asking for permission they also went through Plaintiff FERNANDO MORENO's pants pockets.

43. Chad Lisk, thinking that the intruders might have come after his father because of a prior arrest or other incident, yelled to his father, "Dad, wake up! There's a guy at the door with a gun." Chad Lisk then began to backtrack slowly to try to retrieve his duty weapon in order to defend himself and his family.

44. One of the two men then asked Chad Lisk if he was Troy Lisk, to which Chad Lisk replied, "No." Fearing the men were there to hurt his brother, Chad Lisk continued to retreat to retrieve his duty weapon. Chad Lisk then said to the men, "I don't see uniforms on either one of you," and one of the men replied, "I don't see a uniform on you, either." At that point, the man not holding the gun produced a badge, and held it out from behind the man holding the gun.

45. Seeing the badge, Chad Lisk started back down the stairs, still holding his hands in the air with his badge and wallet exposed. When he got within reach of the man with the gun, that man holstered his weapon and knocked Chad Lisk's wallet and badge out of his hand. The man then physically restrained Chad Lisk, pushed him from the front hall into the living room, and searched him.

46. When the defendant police officer examined Chad Lisk's identification, Chad Lisk asked, in light of the fact that he had identified himself as a police officer, if it was necessary for him to be manhandled. The defendant officer replied that once he confirmed

COMPLAINT FOR DAMAGES -- 8

LAW OFFICES OF MICHAEL G. BRANNAN
2033 SIXTH AVENUE, SUITE 800
SEATTLE, WASHINGTON 98121
206-448-2065

that Chad Lisk was "a cop," "we'll be o.k."

47. At this point, Cheryl Lisk came down the steps. Seeing her, Chad Lisk asked her to tell the men that he was a cop. She did, but the men kept Chad Lisk from moving. One of the men told Cheryl Lisk that they wanted to speak with Troy Lisk. Cheryl Lisk told the men that who they had was not Troy Lisk. When Chad Lisk attempted to leave the living room, he was prevented from doing so by the defendant police officers.

48. Thomas Lisk had been awakened by the sound of someone yelling that there was someone in the house with a gun. Just as he was thinking that he needed to retrieve his duty weapon, his daughter, Tamara Lisk, threw open his bedroom door and told him that the police were holding Chad Lisk and Plaintiff FERNANDO MORENO downstairs.

49. Thomas Lisk put on his robe and headed downstairs. He saw his wife, Cheryl Lisk, near the bottom of the stairs, and he saw a man in plain clothes holding Chad Lisk by the arm in the doorway between the front hall and the living room. He saw another man in plain clothes standing in the front hall area. He saw a third man, also in plain clothes (wearing a tan sport coat), standing by the front door.

50. Cheryl Lisk asked Thomas Lisk to tell the men that Chad Lisk was a police officer. At the same time, one of the men told Thomas Lisk that they needed to speak with Troy Lisk. Thomas Lisk told the men that Chad Lisk was not Troy Lisk, and that Chad Lisk was a police officer.

51. At this point, a fourth man entered the home, and repeated that they needed to speak with Troy Lisk. Thomas Lisk and Cheryl Lisk went upstairs to get Troy Lisk. The man who had been holding Chad Lisk downstairs entered Troy Lisk's bedroom. The man in the

tan sport coat, who verbally identified himself as Sgt. Ritter from the Seattle Police department (defendant DAVID RITTER), asked if Thomas Lisk was really a police officer, and Thomas Lisk indicated that he was. Defendant DAVID RITTER then invited Thomas Lisk to go downstairs to receive an explanation.

52. Defendant DAVID RITTER explained why they wanted to speak with Troy Lisk, and how they had come by their information. Thomas Lisk walked back upstairs to check on his wife, who was sitting on the edge of their bed. One of the men who had entered the home, believed to be defendant PAUL SUGURO, was standing at the top of stairs, and engaged Thomas Lisk in conversation to confirm that he was, in fact, a Bellevue Police Officer.

53. When Thomas Lisk went into his bedroom, he observed that his wife, Cheryl Lisk, appeared to be very upset and very frightened. He explained to her why the police wanted to speak with Troy Lisk. Just outside the bedroom door, Thomas Lisk saw a King County Sheriff's Deputy pushing Chad Lisk's chest and holding him against the wall. This police officer, later identified as defendant SHANE WATKINS, was the first one that Thomas Lisk had seen wearing a uniform.

54. Thomas Lisk saw Chad Lisk look defendant SHANE WATKINS in the eye and heard Chad Lisk tell defendant WATKINS to get his hands off him. Seeing what was happening, Thomas Lisk attempted to step between WATKINS and Chad Lisk and asked what was going on. WATKINS wanted to speak with Thomas Lisk later, but Thomas Lisk insisted they talk right then. Chad Lisk said that it was okay, and Thomas Lisk backed away and observed as WATKINS placed handcuffs on Chad Lisk and led him outside the home.

1  Defendant PAUL SUGURO stood by and observed this entire incident.

2  55.     Earlier, the men who were holding Chad Lisk let him walk out of the living room and onto the front porch. Outside, there was at least one uniformed King County Sheriff's deputy and several men in plain clothes. Chad Lisk turned around and headed back into the house. One of the detectives told him, "You don't need to go back in there for anything." As Chad Lisk continued to go back into the house, one of the detectives called one of the uniformed King County Sheriff's deputies by name and told him to follow Chad Lisk into the house.

56.     Chad Lisk went upstairs, where he saw his brother, Troy Lisk, being questioned by two police officers. He saw his mother, Cheryl Lisk, standing at the top of the stairs looking very frightened. Chad Lisk spoke with her to try to comfort her, and as he was doing so, the uniformed King County Sheriff's Deputy, later identified as defendant SHANE WATKINS, stepped in between them, right in Chad Lisk's face, and began to scream at Chad Lisk, telling him to "Shut your mouth."

57.     When Chad Lisk tried to ask WATKINS to back up a little bit and talk about what was going on, WATKINS shoved Chad Lisk in the chest and held him against the wall. As noted above, Thomas Lisk attempted to stop what was happening, but WATKINS would not cooperate with Thomas Lisk. He led Chad Lisk down the stairs, out the front door, and placed him into a patrol car.

58.     Plaintiff FERNANDO MORENO saw and heard all this commotion, saw his friend and host Chad Lisk being pushed up against a wall, handcuffed, and led away. FERNANDO MORENO was very frightened, and was traumatized by what she saw and

COMPLAINT FOR DAMAGES -- 11

LAW OFFICES OF MICHAEL G. BRANNAN
2033 SIXTH AVENUE, SUITE 800
SEATTLE, WASHINGTON 98121
206-448-2065

heard.

59. The defendant police officers did not knock on the door to seek permission to enter the Lisk home.

60. The defendant police officers did not announce who they were in a timely manner.

61. The defendant police officers did not have a search warrant or an arrest warrant.

62. The first four or five defendant police officers to enter the home were not in uniform.

63. All the acts of defendants PAUL SUGURO, RUSSELL WEKLYCH, and DAVID RITTER alleged herein were performed in the course and scope of their employment with the Seattle Police Department.

64. All the acts of defendants JAMES A. KING, SHANE WATKINS, and TRAVIS DEFRIES alleged herein were performed in the course and scope of their employment with the King County Sheriff's Department.

## IV.  CAUSES OF ACTION

**First Cause of Action: 1983 Action, Deprivation of Fourth Amendment Rights**

65. Plaintiff realleges and incorporates by reference all previous allegations.

66. Defendants SEGURO, WEKLYCH, RITTER, WATKINS, KING, and DEFRIES entered the Lisk home without any probable cause to believe that any resident or guest of the home had committed any criminal offense, thus depriving, under color of state law, plaintiff's Fourth Amendment rights to be free from unreasonable searches or seizures,

causing defendants SEGURO, WEKLYCH, RITTER, WATKINS, KING, and DEFRIES to be liable to all plaintiff under 42 U.S.C. § 1983.

**Second Cause of Action: 1983 Action, Deprivation of Fourth Amendment Rights**

67. Plaintiff realleges and incorporate by reference all previous allegations.

68. While acting under color of state law, defendant SHANE WATKINS used excessive force against FERNANDO MORENO, thereby depriving him of his Fourth Amendment right to be free from unreasonable seizures. In so doing, defendant WATKINS caused FERNANDO MORENO physical pain and severe emotional distress.

69. Defendant PAUL SUGURO stood by while defendant WATKINS used excessive force against FERNANDO MORENO and did nothing to stop it or assist FERNANDO MORENO in any way. In so doing, defendant SUGURO is liable to FERNANDO MORENO for this deprivation of FERNANDO MORENO's Fourth Amendment right to be free from unreasonable seizures.

**Third Cause of Action: Outrage**

70. Plaintiff realleges and incorporates by reference all previous allegations.

71. Defendants SEGURO, WEKLYCH, RITTER, WATKINS, KING, and DEFRIES intentionally or recklessly inflicted emotional distress upon FERNANDO MORENO, acting in a manner so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, thereby committing the tort of outrage.

72. Under the doctrine of respondeat superior, defendants CITY OF SEATTLE and KING COUNTY are liable to FERNANDO MORENO for the tort of outrage, as the

C03-1328P

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
FERNANDO MORENO

**DEFENDANTS**
PAUL SUGURO, et al

**(b) County of Residence of First Listed Plaintiff** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  KING
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
LAW OFFICES OF MICHAEL G. BRANNAN
2033 6th AVE, Suite 800
Seattle, WA 98121  (206) 448-2065

Attorneys (If Known)

FILED ____ ENTERED
____ LODGED ____ RECEIVED
JUN 20 2003  KN
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. §1983. Defendants violated civil rights of plaintiff by their unlawful search and seizure, and committed tort of outrage

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 150,000, plus fees as to each defendant
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE  MARSHA PECHMAN
DOCKET NUMBER  C02-1327P

DATE  6/20/03
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____